UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KENNETH THOMAS                                                    Plaintiff

v.                                                      Civil Action No. 3:21-cv-549-RGJ

DETECTIVE WILLIAM MAYO, ET AL.                                 Defendants

## MEMORANDUM OPINION & ORDER

Defendants William Mayo, Jonathan Robbins, Curt Flynn, Robert King, Steve Conrad, and Louisville-Jefferson County Metro Government ("Metro") move for summary judgment. [DE 34].[1] The Plaintiff, Kenneth Thomas, ("Thomas") responded in opposition, [DE 45] and Metro replied. [DE 48]. The matter is ripe for adjudication. For the reasons below, the motion for summary judgment is **GRANTED.**

## I.      BACKGROUND

On October 4, 2018, Louisville Metro Police Department ("LMPD") Officers initiated a traffic stop of Thomas's vehicle for failure to properly wear seatbelts. [DE 1 at 7, ¶23]. LMPD Officer William Mayo ("Mayo") requested Thomas exit the vehicle while other officers checked the remaining passengers for outstanding warrants. [*Id.* ¶ 27]. Officer Robert King ("King") began searching the vehicle after observing an open container in plain view. [*Id.* at 9, ¶ 43]. During the search, King identified a "heavy" motorcycle vest with a .380 caliber Remington pistol in one of its pockets. [*Id.* ¶¶ 47, 49]. Thomas and a passenger were arrested because they both were felons. [DE 34-3, Mayo Body Camera Video at 23:38.].

---

[1] Although Counsel attached a Memorandum in support of their motion [DE 34-1], the Joint Local Rules for the Eastern and Western Districts of Kentucky contemplate a single, unified motion and memorandum. See Local Rule 7.1. In the future, Counsel is advised to file a unified motion.

Thomas was charged federally with being a felon in possession of a firearm. [DE 1 at 10-11, ¶¶ 56]. The court in the criminal action suppressed evidence of the firearm, finding that possession of an open alcohol beverage container in a motor vehicle did not justify a search as it is not considered a crime according to the Kentucky Penal Code. [*See* DE 34-5 at 216-17, 225, *United States v. Thomas*, 3:19-cr-00024-JHM, Suppression Ord. (citing *Jennings v. Commonwealth*, 2016 WL 447754, at *4) (Ky. Ct. App., Feb. 5, 2016))]. In the same order, the Court found that Mayo's testimony that he smelled marijuana as an alternative basis for the search was not credible. [*Id.*] On October 12, 2020, the criminal action was ultimately dismissed. [DE 1 at 12 ¶70].

Thomas filed this action on August 27, 2021, raising § 1983 claims for (1) malicious prosecution; (2) false arrest; (3) fabrication of evidence; (4) selective enforcement; (5) unlawful search and seizure; (6) failure to intervene; and (6) *Monell* failure to train and illegal custom, practice, and policy. [DE 1]. Thomas also raises state law claims for (1) battery; (2) false arrest; (3) malicious prosecution; (4) negligent supervision and training; (5) negligence; and (6) false light. [*Id.*] Metro moves for summary judgment, arguing that there is no genuine dispute as to whether there was probable cause for Thomas's arrest and prosecution and that all other claims are barred by the statute of limitations. [DE 34-1 at 206].

## II.    STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 2507, 91 L. Ed. 2d 202 (1986). The essential inquiry

is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52, 106 S. Ct. at 2512. The movant has the initial burden to demonstrate the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S. Ct. at 2514 (discussing FED. R. CIV. P. 56(e)). "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States,* 342 F.3d 493, 497 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). Alternatively, either party may carry its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(B).

It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S. Ct. at 1356, 89 L. Ed. 2d 538 (1986). Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)) (internal

quotation marks omitted). If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

### III.    DISCUSSION

#### 1.   § 1983 Claims

"If a police officer violates the Constitution, '42 U.S.C. § 1983 provides a civil remedy for those' injured by the violation." *Jackson v. City of Cleveland*, 925 F.3d 793, 813 (6th Cir. 2019) (quoting *Peffer v. Stephens*, 880 F.3d 256, 263 (6th Cir. 2018)). "[Section] 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation omitted). "If a police officer violates the Constitution, '42 U.S.C. § 1983 provides a civil remedy for those' injured by the violation." *Jackson v. City of Cleveland*, 925 F.3d 793, 813 (6th Cir. 2019) (quoting *Peffer v. Stephens*, 880 F.3d 256, 263 (6th Cir. 2018)). To succeed on a §1983 Fourth Amendment case for malicious prosecution, a plaintiff must be able to prove that: (1) there was an initiation of a criminal prosecution against him that Defendants either made, influenced, or participated in, (2) there was no probable cause, (3) he consequently suffered a deprivation of liberty apart from the initial seizure, and (4) the criminal proceeding was resolved in his favor. *Sykes v. Anderson*, 625 F. 3d 294, 308-309 (6th Cir. 2010). Similarly, "[i]n order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." *Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir. 2009), *quoting Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002).

In Kentucky, §1983 actions are limited by the one-year statute of limitations set forth in KRS 413.140(1). *See Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007) *and Collard v. Ky. Bd. Of*

4

*Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). The Sixth Circuit has explained that "[a]lthough we borrow the statute of limitations for a § 1983 action from state law, we look to federal law to determine when a cause of action accrues and thus when the statutory period begins. *Printup v. Dir., Ohio Dep't of Job & Fam. Servs.*, 654 F. App'x 781, 785 (6th Cir. 2016) (citing *Wallace v. Kato*, 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007)). The "standard rule" is a cause of action accrues "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace,* 549 U.S. 384 at 388 (internal quotation marks, citations, and alterations omitted). Because an action generally accrues "when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred," courts typically determine the accrual of a § 1983 action by "look[ing] to the event that should have alerted the typical lay person to protect his or her rights." *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007) (citations omitted). "The cause of action accrues even though the full extent of the injury is not then known or predictable." *Wallace*, 549 U.S. 384 at 391 (citing 1 C. Corman, *Limitation of Actions* § 7.4.1, pp. 526–527 (1991) (footnote omitted). As a result, a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence. *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984) (citing *Briley v. State of California*, 564 F.2d 849, 855 (9th Cir. 1977) (due diligence standard applied to discovery of fraudulent misrepresentation or concealment of facts in § 1983 action).

### a. Malicious Prosecution and False Arrest

Metro argues Thomas's malicious prosecution and false arrest claims must be dismissed as probable cause existed for both the search of Thomas's vehicle and his arrest. [DE 34-1 at 199]. Thomas argues that the firearm found in his car could not provide probable cause because it was suppressed as evidence in his criminal case as "fruit of the poisonous tree," and therefore should

be excluded in the Court's analysis of his malicious prosecution and false arrest claims. [DE 45 at 251-252].[2]

The "fruit of the poisonous tree" doctrine precludes the government from using evidence acquired during an unconstitutional search and seizure in a criminal prosecution against the victim of the unconstitutional action. *United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Federal courts have widely held that the exclusionary rule and the fruit of the poisonous tree doctrine do not apply to § 1983 actions. *See, e.g.*, *Lingo v. City of Salem*, 832 F.3d 953, 960 (9th Cir. 2016) ("[N]othing within the fruit-of-the-poisonous-tree doctrine suggests that an officer must ignore facts that would give him probable cause to arrest a person merely because those facts were procured through an unlawful search."); *Black v. Wigington*, 811 F.3d 1259, 1268 (11th Cir. 2016) ("[T]he exclusionary rule does not apply in a civil suit against police officers . . . Accordingly, the officers can rely on the evidence that they found in the [Plaintiffs'] trailer to prove that the arrest warrants were supported by probable cause."); *Townes v. City of New York*, 176 F.3d 138, 146, 148 (2d Cir. 1999) ("In a § 1983 suit . . . [t]he fruit of the poisonous tree doctrine is not available to elongate the chain of causation . . . The evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all."); *Martin v. Coyt*, No. 1:10-CV-00176-R, 2012 WL 1574823, at *13, 2012 U.S. Dist. LEXIS 61997 at *36-37 (W.D. Ky. May 3, 2012) (holding that because the Fourth Amendment's exclusionary rule does not apply to § 1983 proceedings "the lack of probable cause to initially arrest and search the

---

[2] Thomas asserts in his response that "[t]he Fourth Amendment False Arrest claims should be dismissed as Thomas' arrests resulted from probable cause," [DE 45 at 251] and that "the only argument to support [Thomas's] claims could be that the gun cannot support probable cause for the criminal charge because the search was unlawful. However, 'that would be an improper application of the fruit of the poisonous tree doctrine.'" [*Id.*]. Even so, the substance of Thomas's response suggests the two statements above were a simple drafting error that were not intended to concede that probable cause existed, particularly when he later states that "probable cause did not exist for the arrest and criminal charges brought against Thomas." [DE 45 at 255]. As a result, those statements are disregarded.

plaintiff did not vitiate [the defendant]'s discovery of the pill and the legitimate probable cause to arrest[.]"); *Cobb v. City of Columbus*, No. C-2-99-579, 2000 WL 1621091, at *4, (S.D. Ohio Oct. 20, 2000) (noting that the Sixth Circuit had not yet addressed this issue but finding the Second Circuit's reasoning in *Townes* persuasive concluding that even if a stop and search were unlawful, the plaintiff's false arrest and false imprisonment claims failed because the drug paraphernalia found justified the defendants' brief detention of the plaintiff to issue him a misdemeanor summons).

As noted above, that the firearm in Thomas's car was discovered through an unreasonable search is immaterial to the Court's analysis, since the Fourth Amendment's exclusionary rule does not apply to § 1983 proceedings. It is undisputed that Thomas was a felon at the time of the traffic stop and arrest. [DE 34-1 at 200; DE 45 at 249]. It is also undisputed that there was a firearm in Thomas's car at the time of the search. [*Id.*] When such facts are undisputed, officers have "probable cause for [plaintiff's] arrest, notwithstanding the previous unlawful stop . . . [and] the existence of probable cause for the arrest would also bar recovery on a theory of malicious prosecution." *Martin v. Marinez*, 934 F.3d 594, 598 (7th Cir. 2019). As a result, there is no genuine dispute as to whether there was probable cause for Thomas's arrest and subsequent prosecution for the felon in possession charge. Metro's motion for summary judgment as to Thomas's claims for false arrest and malicious prosecution is **GRANTED**.

### b. Fabrication of Evidence

Metro moves for summary judgment on Thomas's fabrication of evidence claim asserting that there is no genuine dispute that a firearm was found in Thomas's car. [DE 34-1 at 203-204]. While Thomas's fabrication claim is based on Officer Mayo's allegedly false testimony, Metro argues that the testimony is not material as to whether there was sufficient probable cause for

Thomas's detention. [*Id.*]. Thomas argues that there is a genuine dispute over whether the court's probable cause determination was influenced by Officer Mayo's allegedly fabricated evidence, claiming that the "false testimony concerning [Mayo's] basis for initiating the traffic stop in the first place and his false claims of having a super sense of smell for the order of unburnt marijuana, if believed, would have effected [sic] the judge's determination of probable cause on the basis of the fabricated evidence." [DE 45 at 254]. Thomas specifically points to "Mayo falsely stating that he could see and did [see] the individuals in the Tahoe not wearing [any] seatbelts while they were stopped at the red light[.]" [*Id.*]

As a threshold matter, Thomas alleges a fabrication of evidence claim under both the Fourth and Fourteenth Amendments. [DE 1 at 44-45 ¶¶ 229-235]. Yet a claim for fabrication of evidence brought under the Fourteenth Amendment applies only to convictions. *Compare Lester v. Roberts*, 986 F.3d 599, 608 (6th Cir. 2021) (explaining that the malicious-prosecution claim in the Fourth Amendment is based on "*pretrial detention*" without probable cause (emphasis added)), *with Anderson v. Knox Cnty.*, No. 22-5280, 2023 WL 4536078, at *8 (6th Cir. July 13, 2023) ("Using false evidence to *convict* violates a defendant's *right to a fair trial* guaranteed by the Fourteenth Amendment's Due Process Clause."(*citing Coleman v. City of Peoria*, 925 F.3d 336, 344 (7th Cir. 2019). To succeed on a fabrication-of-evidence claim under the Fourth Amendment, the plaintiff must show that the defendants "caused his detention to be unlawfully continued by . . . fabricating evidence [or] withholding exculpatory evidence, the absence of either or both of which would have dissolved probable cause for [the p]laintiff's continued detention" *Gregory v. City of Louisville*, 444 F.3d 725, 747 (6th Cir. 2006).

While Thomas argues that Mayo's allegedly false testimony affected the court's probable cause analysis, this argument is contradicted by the court's suppression order. The court noted that

"Mr. Thomas does not argue—nor could he—that the traffic stop was invalid at its outset . . . [and] Mr. Thomas does not contest the accusation that the occupants of the vehicle were not wearing seatbelts." [DE 34-5 at 212]. The court also held that "the Court does not credit Detective Mayo's testimony that he smelled unburnt marijuana." [DE 34-5 at 225]. Even if the court had partially based its finding of probable cause on Officer Mayo's allegedly false testimony, its absence would not have dissolved probable cause for Thomas's continued detention. As noted above, the Court may consider excluded evidence in determining whether there was probable cause to prosecute Thomas for being a felon in possession. Thomas was a felon at the time of his arrest, and he was in possession of a firearm. As a result, there is no genuine dispute as to whether there was probable cause for Thomas's arrest for being a felon in possession. Metro's motion for summary judgment as to Thomas's claim for fabrication of evidence is **GRANTED**.

### c. Selective Enforcement

Metro argues that all of Thomas's § 1983 claims other than the malicious prosecution claim should be dismissed as they were not timely filed within the one-year statute of limitations after Thomas's arrest. [DE 34-1 at 205-206]. Thomas argues that he "was not aware that he was treated differently from similar situated individuals in an unprotected class until on or about April 30, 2021, when the United States Department of Justice announced that it had opened an investigation of the LMPD's practices concerning unconstitutional stops, searches and seizers [sic]." [DE 45 at 255]. In essence, Thomas argues that his claims were timely filed because the statute of limitations began when Department of Justice announced an investigation into LMPD's practices, not when he was arrested on October 4, 2018.

Although the Sixth Circuit has not ruled when the cause of action accrues for a Fourteenth Amendment selective enforcement claim, the Third Circuit has provided guidance. In *Dique v.*

9

*New Jersey State Police*, the Third Circuit held that "in a case of selective-enforcement we will no longer require that the complainant have been convicted and have had that conviction reversed, expunged or invalidated [as required by *Heck*]. . . the statute of limitations 'beg[an] to run at the time [plaintiff was] detained pursuant to legal process.'" 603 F.3d 181, 188 (3d Cir. 2010) (citing *Wallace v. Kato*, 549 U.S. at 397). The Third Circuit applied a "due diligence" standard, finding that although the statute of limitations did not begin to run when the officer purported to stop his car for a speeding violation, it did begin to run "when his attorney became aware of the extensive documents describing the State's pervasive selective-enforcement practices." *Dique*, 603 F.3d 181 at 188. Dique's claim accrued when he "discovered, or by exercise of reasonable diligence should have discovered, that he might have a basis for an actionable claim." *Id.*

In this case, Thomas had even more reason than the Plaintiff in *Dique* to have "discovered, or by exercise of reasonable diligence should have discovered, that he might have a basis for an actionable claim." Thomas argues that until the Department of Justice announced it was investigating the LMPD's practices in 2021, he personally was not aware that he might have a basis for an actionable claim for LMPD's alleged selective enforcement based on his race. The relevant inquiry for discovering the basis of a claim, however, "is an objective one." *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir. 2000) As Thomas alleges, "during and after the shooting of Breonna Taylor," LMPD had become "famous" for treating African Americans differently because of their race, and this treatment had prompted a "nation wide demand for justice to end discriminatory policing practices by the LMPD." [DE 1 at 19 ¶97].

"Where events receive . . . widespread publicity, plaintiffs may be charged with knowledge of their occurrence." *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir. 2000) (citing *United Klans of Am. v. McGovern*, 621 F.2d 152, 154 (5th Cir.1980). In *Hugues*, Sixth Circuit noted that

there "had been numerous news reports both in print and on television discussing the facts supporting Hughes's claims." *Id*. Even though the plaintiff in *Hugues* submitted an affidavit that she personally had not read any newspapers or watched any media coverage, the court held that extensive publicity was sufficient to charge Hughes with constructive knowledge of the events underlying her cause of action.

The facts here are like *Hughes*. Extensive national media coverage arose from LMPD's alleged practice of treating African Americans differently because of their race surrounding the March 13, 2020, shooting of Breonna Taylor.[3] Moreover, Thomas himself specifically cites in his complaint six news articles between 2017-2019, both national and local, that discussed alleged racial disparity in LMPD's practices between white and black citizens. [DE 1 at 14-19 ¶¶ 84-97]. "Based on the undisputed facts concerning the media attention given [to the basis for an actionable claim], no reasonable factfinder could find" that Thomas's cause of action for selective enforcement accrued any later than August 26, 2020. *Hughes,* 215 F.3d 543 at 548. In other words, there is no reason to believe Thomas's claim did not accrue more than a year before he filed suit. Thomas filed his Complaint on August 27, 2021, at least one year after the media coverage. Thomas's claim for selective enforcement is untimely and Metro's motion for summary judgment as to this claim is **GRANTED**.

### d.  Unlawful Search and Seizure and Failure to Intervene

For Thomas's Fourth Amendment claim for unlawful search and seizure, the one-year statute of limitations began to run on October 4, 2018, the date of Thomas's arrest and the alleged illegal search and seizure. *See Michel v. City of Akron*, 278 F. App'x 477, 479–80 (6th Cir. 2008)

---

[3] Federal courts may take judicial notice of the fact of publicity or media coverage without regard to the truth of their contents. *See e.g.*, *Staehr v. Hartford Fin'l Servs*., 547 F.3d 406, 425 (2d Cir. 2008); *DeBenedictis v. Merrill Lynch & Co., Inc.,* 492 F.3d 209, 214 (3d Cir.2007) (taking judicial notice of USA Today and Time Magazine articles submitted by defendants).

(holding that a Fourth Amendment claim under § 1983 begins to run at the time of the search and seizure); *Lovins v. Hurt*, No. 11–216–JBC, 2011 WL 5592771, at *1 (E.D.Ky. Nov. 16, 2011) ("[t]he plaintiffs had reason to know of the injuries they are asserting, the unlawful search and seizure and property deprivation, at the time of the April 22, 2010 search . . . For that reason, the federal constitutional claims related to the April 22, 2010, search will be dismissed as barred by the applicable statute of limitations."). Thomas filed his Complaint on August 27, 2021, beyond the one-year statute of limitations. Thomas's claim for illegal search and seizure is untimely and Metro's motion for summary judgment as to this claim is **GRANTED**.

Thomas also alleges a failure to intervene claim against Defendant King for failing to prevent the search of Thomas's car. [DE 1 at 45-46 ¶¶236-242]. Although most failure-to-intervene claims involve allegations of excessive force, the Sixth Circuit has extended the failure-to-intervene theory of liability beyond the excessive-force context. *See e.g.*, *Johnson v. Vill. of Ottawa Hills*, 5 Fed. App'x 390, 395 (6th Cir. 2001). As a failure to intervene claim is premised on an underlying constitutional violation; the "same accrual date govern[s] both the failure-to-intervene claim and the underlying § 1983 claims that the Defendants are alleged to have failed to intervene and prevent." *Anderson v. Knox Cnty.*, No. CV 6:17-133-KKC, 2018 WL 7500205, at *8 (E.D. Ky. Oct. 3, 2018) (citing *Hoskins v. Knox Cnty., Ky*., 2018 WL 1352163, *16 (E.D. Ky. Mar. 15, 2018). Because Thomas no longer has a claim for unlawful search and seizure, his claim for failure to intervene fails as a matter of law. Moreover, the statute of limitations on this claim began to run on the same date as his illegal search and seizure claim, on October 4, 2018. *Anderson,* 2018 WL 7500205, at *8. Thomas's failure to intervene claim is barred by both a lack of an underlying constitutional violation and the statute of limitations. Metro's motion for summary judgment as to this claim is **GRANTED**.

### e. Failure to Train and Illegal Custom, Practice, and Policy

Thomas asserts *Monell* claims against both Metro and the individual Defendant Officers. [DE 1 at 22-27, ¶¶115-129; 36-37, ¶¶183-188]. When the "execution of a government's policy or custom . . . inflicts the [constitutional] injury," the local government can be held liable under section 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A plaintiff must show that: "1) the [municipality's] training program was inadequate for the tasks that [its employees] must perform; 2) the inadequacy was the result of the [municipality's] deliberate indifference; and 3) the inadequacy was closely related to or actually caused the injury." *Jackson v. City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019) (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006)). *Monell* claims allow for municipal liability "for the constitutional violations of their employees only where the municipality's policy or custom led to the violation . . . [h]owever, "[t]here can be no liability under *Monell* without an underlying constitutional violation" *Chambers v. Sanders*, 63 F.4th 1092, 1101–02 (6th Cir. 2023) (citing *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014). As outlined above, all of Thomas's constitutional claims are either barred by the statute of limitations or fail as a matter of law. Because a *Monell* claim cannot survive where "the officer inflicted no constitutional harm," Metro's motion for summary judgment as to Thomas's *Monell* claims for failure to train and illegal custom, practice, and policy is **GRANTED**. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

### 2. State Law Claims

### a. False Arrest and Battery

In Kentucky, the statute of limitations for false arrest and battery is one year. KRS 413.140(1)(a) & (c). State law claims for false arrest and battery arising out of an arrest generally accrue at the time of the arrest. *See Dunn v. Felty*, No.2004–CA–1029–MR, 2005 WL 736596, at *2 (Ky.App. Apr.1, 2005) (unpublished decision). An officer "is liable for false arrest and battery

13

if he lacked reasonable grounds for the arrest, or if the officer had a reasonable basis for the arrest but used more force than was necessary." *Id*. As noted above, there is no genuine dispute as to whether there was probable cause for Thomas's arrest, and so his false arrest claim fails as a matter of law. Thomas's battery claim arises from Defendant Officer Robbins arresting him, and so Thomas's cause of action also accrued at the time of the arrest. Because Thomas "did not file the action within one year of his arrest" his claims for both false arrest and battery are untimely. *Id*. As a result, Metro's motion for summary judgment as to Thomas's claims for false arrest and battery is **GRANTED**.

### b. State Law Malicious Prosecution

In Kentucky, a malicious prosecution claim requires that:

> 1) the defendant initiated, continued, or procured a criminal or civil judicial proceeding . . .  against the plaintiff;
> 2) the defendant acted without probable cause;
> 3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice . . . ;
> 4) the proceeding . . .  terminated in favor of the person against whom it was brought; and
> 5) the plaintiff suffered damages as a result of the proceeding.

*Estep v. Combs*, 467 F. Supp. 3d 476, 498–99 (E.D. Ky. 2020) (citing *Martin v. O'Daniel*, 507 S.W.3d 1, 11–12 (Ky. 2016)).

Like Thomas's § 1983 claim for malicious prosecution, his claim under state law fails under the second element: that the defendant acted without probable cause. There is no genuine dispute as to whether there was probable cause for Thomas's arrest and subsequent prosecution for the felon in possession charge. As a result, Metro's motion for summary judgment as to Thomas's state law claim for malicious prosecution fails as a matter of law and is **GRANTED**.

### c.  Negligent Supervision and Training and Negligence

Like Thomas's other state law claims, Kentucky's one-year statute of limitations governs his state claims for negligence and negligent training/supervision. KRS 413.140(1); *see, e.g.*, *DeLong v. Arms*, 251 F.R.D. 253, 255 (E.D. Ky. 2008) (one-year Kentucky statute of limitations applies to negligence); *White v. Whitaker Bank, Inc.*, No. 04-CI-05225, 2008 Ky. App. Unpub. LEXIS 95, at *12 (Ky. App. 2008) (citing *Grego v. Meijer, Inc.*, 187 F. Supp. 2d 689, 694 (W.D. Ky. 2001)) ("[T]he statute of limitations to be applied to a negligent supervision claim is the limitations period applicable to the underlying tort committed by the employee."). "[C]laims "for negligent hiring/entrustment/training/supervision, and negligence, accrue[] when the injury occurred." *B.L. v. Schuhmann,* 380 F. Supp. 3d 614, 642 (W.D. Ky. 2019). Thomas alleges his injury arises from his arrest and search, due to the Defendant Officer's failure to follow "the proper law enforcement policies, procedures, and techniques, and to act as reasonable law enforcement officers would act under the same circumstances[.]" [DE 1 at 42 ¶215]. The injury occurred and the one-year statute of limitations began to run on October 4, 2018, the date of Thomas's arrest. As a result, Thomas's negligent supervision and training and negligence claims are untimely and Metro's motion for summary judgment as to these claims is **GRANTED**.

### d. False Light

Although Metro moves for summary judgment on all claims, [DE 34-1 at 197-198], it did not address Thomas's false light claim specifically other than to state that "false light must also be brought within one year after the cause of action accrued in Kentucky," and should be dismissed as untimely. [DE 34-1 at 205]. Thomas does not address this claim in his Response other than to state that he "has not failed to timely file this action with respect to all the remaining claims." [DE 45 at 255]. Thomas states in his Complaint that "[t]he Defendants and, through their actions, placed Plaintiff in a false light to others," [DE 1 at 43 ¶222], and "through their verbal and written

15

statements concerning Plaintiff failed to exercise reasonable care and caution prior to publishing their statements." [*Id.* ¶225].

The cause of action for false light is "within the tort of invasion of privacy . . . *Palmer v. Alvarado,* 561 S.W.3d 367, 371–72 (Ky. Ct. App. 2018) (citing *McCall v. Courier-Journal and Louisville Times Co.*, 623 S.W.2d 882 (Ky. 1981)). False light requires that "(1) the false light in which the other was placed would be highly offensive to a reasonable person, and (2) the publisher had knowledge of, or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other was placed." *McCall*, 623 S.W.2d at 888. False light claims have a one-year statute of limitations. *Porter v. Sergent*, No. CV 5:19-455-KKC, 2020 WL 4495465, at *11 (E.D. Ky. Aug. 4, 2020) (citing *Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 49 (Ky. 2008). Kentucky law does not recognize a claim for invasion of privacy based on oral statements. *McCall,* 623 S.W.2d 882 at 887 ("right of privacy does not prohibit . . . statements which are oral"); *Dukes v. Mid- E. Ath. Conf.*, 213 F. Supp. 3d 878, 884 (W.D. Ky. 2016) (granting judgment on the pleadings for the defendant because the false light claim was based on oral statements). While not explicitly outlined in his claim for false light, the only written statements that Thomas references in his Response are contained in Officer Mayo's investigative report. [DE 45 at 254]. That report was written on October 4, 2018. [*Id.* at 250]. Thomas filed his Complaint on August 27, 2021, well beyond the one-year statute of limitations. As a result, Thomas's claim for false light is untimely and Metro's motion for summary judgment as to this claim is **GRANTED**.

## IV.   CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

16

(1) Defendants' Motion for Summary Judgment [DE 34] is **GRANTED**: Thomas's § 1983 claims for (1) malicious prosecution; (2) false arrest; (3) fabrication of evidence; (4) selective enforcement; (5) unlawful search and seizure; (6) failure to intervene; (6) *Monell* failure to train and illegal custom, practice, and policy; Thomas's state law claims for (1) battery; (2) false arrest; (3) malicious prosecution; (4) negligent supervision and training; (5) negligence; and (6) false light are **DISMISSED**.

(2) As no claims remain, this action is **DISMISSED** and **STRICKEN** from the Court's active docket.

(3) The Court will enter separate judgment.

Rebecca Grady Jennings, District Judge
United States District Court

January 10, 2024

17